[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Betty Ayers has brought this action against defendant North Hartford Development Corporation ("NHDC") for breach of contract. She alleges that on October 8, 1993 she and NHDC entered into a written contract (Plaintiff's Ex. 1.) which provided that she would contribute at least three hundred hours of sweat equity including labor and related activities toward the construction of certain units in a cooperative which defendant planned to build. She claims that in return, defendant would grant to her the right to occupy a unit and acquire an ownership interest in the cooperative. In Count 1 of the complaint she claims that she duly performed all of the conditions of the contract but that the defendant refused to give her membership in the cooperative and refused to give her occupancy in one of the units. In the second count she alleges a violation of CUTPA. In the third count she alleges a violation of theFourteenth Amendment to the United States Constitution.
A trial was held by the court on October 29, 1996. The court finds the following facts.
In early 1993 defendant, a developer known as North Hartford Development Corporation ("NHDC") planned to establish a cooperative and to construct several buildings on Vine Street in Hartford. The purpose of the cooperative was to provide housing for persons of low and moderate income. In early October the plaintiff applied for membership in the cooperative. On October 8 1993 she signed a "Sweat Equity Agreement" which was accepted by the defendant. (Plaintiff's Ex. 1). The agreement provided that if certain duties were performed by the plaintiff, she would be eligible to occupy a unit in one of the buildings and have an ownership interest in the cooperative. Section 5. of the agreement provides in pertinent part as follows:
"5. Sweat Equity Requirements:
 "(a) "Sweat Equity" is required labor, including acceptable substitute labor, on the Building and related activities. These related activities will include:
(1) Attending workshops on various topics CT Page 10145 including management, bookkeeping, building, maintenance and other skills;
 (2) Providing child care during sweat equity labor hours;
(3) Acting as secretary at meetings.
 My sweat equity requirement under this agreement begins at the start of construction of the Building or at the start of training and ends when the Permanent Certificate of Occupancy is issued or at such other time as may be established if this Agreement is extended pursuant to Paragraph 7(a) herein.
 "(b) In order that my family may remain a Cooperative worker in good standing, I agree that the Cooperative Worker (as defined herein and the members of which are listed above) must contribute at least three hundred (300) hours of sweat equity including related activities.
 "(c) I agree that the Developer is in complete charge of the work, and I will perform whatever tasks I am assigned by the Developer, in contributing my sweat equity.
 "(d) My contribution of sweat equity shall be without payment of any wages or other compensation. I understand that my sweat equity has no cash value except to the extent of my right to occupy a unit in the Building upon completion and my right to acquire an ownership interest in the cooperative if I am accepted as a cooperative member.
 "(e) Any substitutions of persons (other that persons listed as other workers above) to complete my sweat equity labor requirements must be accepted by the Developer, I acknowledge that I will still be required to complete my sweat equity requirement as provided in this Agreement if the substitute does not. I acknowledge that failure by either myself, any member of the group constituting the Cooperative Worker, or any substitute, to complete the sweat equity requirement may be the basis for termination of my application for membership."
CT Page 10146
It was understood and agreed by the parties that the three hundred (300) hours of sweat equity included actual work performed as well as attendance at certain training sessions.
After hearing all the evidence, the court does not believe that the plaintiff showed that she in fact completed 300 hours of sweat equity as required by the agreement. Although she testified that she attended training classes which came to about 112 1/2 hours, it appeared that the actual work performed by her or her family came to only 105 3/4 hours (Def's. Ex. D). Thus, her total sweat equity hours (classes plus work performed) came to only 218 1/4 hours, far short of the 300 hours required by the agreement.
The court notes that the plaintiff was requested by letter dated April 25, 1995 to perform sweat equity hours on April 29th and May 6th, 1995 in order to complete work on the housing co-op and she was warned in that letter that "no one will be allowed to move into the cooperative who has not fulfilled the three hundred hour requirement . . ." In spite of this warning, the plaintiff failed to report for work on either April 29th or May 6th (see letter dated June 2, Ex. 4).
The court finds that the plaintiff has failed to prove that she performed the sweat equity 300 hours required by the contract, and it was for this reason that she was denied membership in the cooperative and permission to occupy a unit.
Accordingly, judgment may enter for the defendant on all counts.
Allen, Judge Trial Referee